**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**ASHLAND**

| | |
|---|---|
| **JENNIFER LEE PRESLEY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 0:22-CV-00019-MAS |
| ) | |
| **KILOLO KIJAKAZI,** ) | |
| *Commissioner of Social Security,* ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION & ORDER**

Jennifer Lee Presley ("Presley") appeals the Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act. The Court addresses the parties' competing summary judgment motions. [DE 19, 21]. The matter is ripe for decision. For the reasons stated below, the Court will grant the Commissioner's motion for summary judgment.

**I.   FACTUAL AND PROCEDURAL HISTORY**

**A.   PROCEDURAL HISTORY**

On February 3, 2016, and March 9, 2016, Presley filed applications for Disability Insurance Benefits and Supplemental Security Income, respectively,

pursuant to Titles II and XVI of the Social Security Act.[1] [Administrative Transcript "Tr." at 13, 216, 218, 230-31, and 636-42]. She alleged that her disability began on January 15, 2014, in both applications. [Tr. at 230-31 and 636-42]. Presley's applications were denied initially on July 26, 2016, and again on reconsideration on February, 2017. [Tr. at 87, 88, 100-02, and 636-42]. After conducting hearings on October 31, 2018, and April 29, 2019, ALJ Melinda Wells found Presley was not disabled and issued an unfavorable decision on May 13, 2019. [Tr. 13-24, 31-63]. The Appeals Council denied Presley's request for review of the ALJ's decision. [Tr. 1-5].

Presley then filed for review with this Court, alleging two errors: first, that the ALJ evaluate and sufficiently explain her analysis of the physical restrictions assessed by treating physician Dr. Workman under the applicable regulations rendering the residual functional capacity determination unsupported by substantial evidence; and second, that the ALJ erred in failing to find any mental limitations, rendering the residual functional capacity determination unsupported by substantial evidence. [DE 19 at Page ID# 840].

B. **MEDICAL HISTORY**

Presley was 47 years old at the alleged onset date. [Tr. 22]. She alleged disability due to a history of a stroke (2008); brain aneurysm; back pain; hand numbness; gastrointestinal problems; depression; dizziness; headaches; poor

---

[1] Presley filed her claims prior to the Social Security Administration rule revisions that took effect on March 27, 2017. 82 Fed. Reg. 5844. The 2017 revisions apply to Presley's case as set forth in the statute; otherwise, the prior rules apply. The Court cites to the rules that apply in this matter as appropriate. 20 C.F.R. § 404.1527.

concentration; and memory problems. [Tr. 13, 216, 247, 636]. Medical records show from the date of onset (January 2014) gastrointestinal problems, including bloating, nausea, hiatal hernia, and esophagitis. [Tr. 402]. Presley presented to the emergency room following a motor vehicle accident in January 2016; imaging of her head, neck, shoulder, and leg were unremarkable but she was discharged with a sling on her left arm. [Tr. 418-19]. From March 2016 through December 2018, Presley sought treatment at Louisa Medical Clinic for primary care and complaints including lower back pain [Tr. 536], skin rash [Tr. 537-38], depression, hip and knee pain [Tr. 528], and panic attacks [Tr. 520]. At these various visits, Presley was diagnosed with chronic low back pain, arthralgias, tobacco dependence, onychomycosis of toenails, and psoriasis [Tr. 538], sleep apnea [Tr. 532], obesity [Tr. 535], degenerative joint disease [Tr. 530], major depression [Tr. 530], chronic obstructive pulmonary disease (COPD) [Tr. 518 and 530], and chronic neck and back pain that was getting worse [Tr. 510]. Presley also sought treatment from Three Rivers Medical Clinic on March 19, 2019, where she was diagnosed with acute bronchitis, back spasms, psoriasis, and depression. [Tr. 631-34].

C.  **MEDICAL SOURCE OPINIONS**

In June 2016, Megan Green, Psy.D., performed a psychological evaluation of Presley in connection with her disability application; she diagnosed unspecified anxiety [Tr. 468-471]. Dr. Green opined that Presley could understand, remember, and carry out simple instructions and adapt to changes in a work environment that required completion of only simple, repetitive tasks, but may have mild difficulty concentrating and responding to supervision and coworkers [Tr. 471].

In July 2016, state agency psychologist Amy Cooper, Ph.D., reviewed Plaintiff's medical records and found that she had "severe" anxiety but could understand, remember, and carry out simple instructions but may need a well-spaced work environment with only a few familiar coworkers to minimize stress and should avoid excessive workloads, quick decision making, rapid or frequent changes, and multiple demands [Tr. 77, 82-83 (duplicated at Tr. 656-57)]. In February 2017, however, state agency Jane Brake, Ph.D., reviewed Plaintiff's medical records and disagreed with Dr. Cooper's findings, instead finding that Plaintiff had non-severe anxiety, meaning that it did not significantly affect her ability to perform basic work activities [Tr. 475-88]. *See* 20 C.F.R. § 404.1522(a) (impairment is non-severe if it does not significantly limit the physical or mental ability to do basic work activities).

State agency physician Jack Reed, M.D., reviewed Plaintiff's medical records in 2017 and found that she could lift and carry 50 pounds occasionally and 25 pounds frequently; could sit and stand/walk six hours each per eight-hour workday; could frequently climb ladders, ropes, or scaffolds, stoop, and crawl (and could perform other postural activities without limitation); could frequently reach with her left arm overhead and in front/laterally; and should avoid concentrated exposure to extreme temperatures, vibration, and hazards. [Tr. 489-98].

Walter Waltrip, M.D., performed an examination of Plaintiff in 2018 in connection with her disability application on November 19, 2018. [Tr. 589-92]. The exam noted a fine tremor of her head, limitation of range of motion of her back to 60 degrees, and enlargement of the interphalangeal joints on both hands. [Tr. 591]. Dr.

Waltrip additionally noted Presley's reported chronic back pain with radiculopathy in both hips; chronic neck pain with radiculopathy into the left upper extremity; daily cramping and diarrhea; and shortness of breath with exertion. [Tr. 592-93]. Following his examination, he opined that Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally; could sit six hours in an eight-hour workday; could stand/walk four hours each per workday, including stand two hours at a time and walk one hour at a time; could frequently use her hands and operate foot controls; could occasionally perform all postural activities but never crawl or climb ladders or scaffolds; and could occasionally be exposed to most environmental conditions but never unprotected heights. [Tr. 593-98].

Also in 2018, Mark Workman, M.D., Presley's primary treating physician at Louisa Medical Clinic, conducted a consultative exam and completed an opinion indicating that Plaintiff had depression, arthritis, COPD, and obstructive sleep apnea [Tr. 500-03 and 585-88]. He opined that Plaintiff could lift only up to 10 pounds; could stand and walk one hour total and sit two hours total per workday and needed a sit/stand option; could never perform any postural activities; and would miss four or more days of work per month, could only walk 1 block without a cane, would need to lie down every 2 hours lasting 30 minutes in duration, could never be around unprotected heights or moving mechanical parts, among other limitations. [Tr. 500-03]. In a treatment note from August 31, 2018, Dr. Workman opined Presley "appears to be disabled form any type of manual labor due to her chronic neck and back pain. It would be very detrimental for her to do any lifting with the manual labor job. It

5

would also be very difficult for her to do a sedentary job with her lack of education and her persistent pain even at rest." [Tr. 510].

### D. ALJ'S DECISION

The ALJ found that Presley had the "severe" impairments of cervical and lumbar degenerative disc disease, but found that her various other physical impairments (e.g., history of brain aneurysm, COPD, sleep apnea) and her anxiety were not "severe." [Tr. 16-18]. The ALJ went on to find that Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b) (lifting and carrying up to 10 pounds frequently and 20 pounds occasionally) that involved standing for two hours at a time and four hours total per workday; walking for one hour at a time and for four hours total per workday; sitting six hours total per workday; occasionally climbing ramps and stairs, balancing, stooping, kneeling, and crouching; and never crawling or climbing ladders, ropes, or scaffolds, among additional environmental limitations. [Tr. 18]. Based on vocational expert testimony [Tr. 37-39], the ALJ found that Plaintiff could not perform any of her past work but could perform three representative unskilled light occupations (information clerk, garment sorter, and ticket seller) existing in significant numbers in the national economy. [Tr. 22-23]. Thus, the ALJ found that Plaintiff was not disabled under the Social Security Act. [Tr. 23-24].

## II.  LEGAL FRAMEWORK[2]

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial-evidence standard allows considerable latitude to administrative decision makers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record as a whole. *Cutlip*, 25 F.3d at 286. However, the Court need not comb the

---

[2] The Court notes that the legal standard for DIB claims mirrors the standard for Supplemental Security Income ("SSI") claims. *See Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. 1991) (table). "The standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013), *report and recommendation adopted*, 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at *4 (E.D. Ky. Feb. 3, 2010). The Court thus references both SSI and DIB case law interchangeably throughout, mindful of the distinct Title II DIB-specific regulations.

entire record in search for facts supporting under-developed arguments. [*See* General Order No. 13-7 (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different original result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

For context, the Court briefly outlines the ALJ's five-step sequential analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 416.920(a)(4). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. *Id.* at § 416.920(a)(4)(ii). In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of

Impairments. *Id.* at § 416.920(a)(4)(iii). In the fourth step, the ALJ determines the claimant's RFC and assesses whether the claimant can perform past relevant work. *Id.* at § 416.920(a)(4)(iv). Finally, in the fifth step, the burden shifts to the Commissioner. The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience. *Id.* at § 416.920(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends there. *Id.* at § 416.920(a)(4).

### III.   ANALYSIS

#### A.   DR. WORKMAN'S OPINION

Presley argues that the ALJ erred in her analysis of the physical restrictions of her treating physician Dr. Workman, rendering her RFC unsupported by substantial evidence. Presley argues that the ALJ inadequately rejected one opinion from Dr. Workman and completely failed to evaluate another one of his opinions. [DE 19-1 at Page ID# 851].

As Presley correctly states, for claims filed prior to March 27, 2017, more weight should be given to treating sources because they provide a detailed, longitudinal picture of Plaintiff's impairments. 20 C.F.R. § 404.1527(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (noting "the regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."). If a treating physician's opinion is not entitled to controlling weight, the ALJ must

9

consider the following factors: length, nature, and extent of the treating relationship; supportability of the opinion; consistency of the opinion with other evidence in the record; the specialization of the source; and any other factors that support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6). The ALJ, in discounting Dr. Workman's opinion, took those factors into consideration. The ALJ stated that Dr. Workman's opinion was "not consistent with the conservative treatment history and is not supported by the objective findings" because the examinations of Presley "show only occasional exacerbation causing limitation, with the majority of examinations being normal." [Tr. 21].

The ALJ must consider whether an opinion such as Dr. Workman's is consistent with the record as a whole. Here, the ALJ determined that Dr. Waltrip's opinion was entitled to great weight because it was "consistent with the totality of the medical record and Dr. Waltrip's own examination of" Presley. On substantial evidence review, the Court need only find that a "reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993) (quotation omitted).

Presley further argues that the ALJ erred in ignoring Dr. Workman's opinion in a treatment note on August 31, 2018, stating that Presley "appears to be disabled" and opining that "[i]t would be detrimental for her to do any lifting with the manual labor job. It would also be very difficult for her to do a sedentary job with her lack of

10

education and her persistent pain even at rest." [DE 19-1 at Page ID# 852; Tr. at 510].

First, the Court agrees with the Commissioner that Dr. Workman's opinion that Presley was "disabled" is a determination reserved for the Commissioner and was not entitled to any special significance regardless of the fact that it was from a treating physician. *Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 431 (6th Cir. 2018) ("no special significance will be given to source of an opinion—such as whether a claimant is disabled or unable to work—reserved to the Commissioner").

Second, the Court finds that the ALJ's decision was supported by substantial evidence even though she did not specifically mention the treatment note from August 31, 2018. Unlike the cases quoted by Presley (*see Dalton v. Colvin*, 3:16-cv-343430, 2017 WL 343430 at *10 (S.D. Ohio Jan. 24, 2017)), the ALJ did not "completely fail to weigh or even acknowledge, [the treating physician's] opinion" but, rather, the ALJ simply did not mention *this specific* statement in Dr. Workman's treatment notes. The August 31, 2018, treatment note was both duplicative of the formal opinion Dr. Workman rendered on October 3, 2018, [Tr. 500-503], and appears to relate more to her ongoing care than to her specific limitations in the workplace. Dr. Workman's consultative examination and opinion from October 3, 2018, assessed and opined on Presley's exact limitations in the workplace; for example, the August 31, 2018, treatment note stated that "[i]t would be very detrimental for to do any lifting[,]" but the October 3, 2018, treating source statement opined specifically that

Presley could occasionally lift less than 10 pounds, rarely lift 10 pounds, and never lift more than 20 pounds. [Tr. 501].

Presley suggests that because the treatment note "indicates essentially no lifting" and states Presley cannot perform even sedentary work, it was reversible error for the ALJ not to address it that requires remand. However, the October 3, 2018, treating source statement was *after* the three-sentence treatment note on August 31, 2018, in which Dr. Workman stated it would be "detrimental" for Presley to do any lifting. The limitations Dr. Workman opined existed for Presley in the October treating source opinion were so restrictive that, although they were slightly more liberal than Dr. Workman's August treatment note, the ALJ found Dr. Workman's opinion to be inconsistent with the record as a whole, Dr. Workman's examinations, and Dr. Waltrip's examination, and therefore afforded it little weight. [Tr. 19-21].

The ALJ must provide "good reasons" for not according controlling weight (as here) to the treating physician's opinions. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The Court finds that for the reasons stated above, the ALJ satisfied that requirement here, even where she did not specifically address the August 31, 2018, treatment note. And, even if the failure to address the treatment note does not fully comply with the "good reasons" requirement, the Sixth Circuit has found such error to be harmless.

> [T]he good reason requirement does not require conformity at all times. Violation of the rule constitutes harmless error if the ALJ has met the goals of the procedural requirement—to ensure adequacy of review and to permit the claimant to understand the disposition of his case—even

12

> though he failed to comply with the regulation's terms. An ALJ may accomplish the goals of this procedural requirement by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record.

*Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440, 2010 WL 3199693, at *4 (6th Cir. Aug. 10, 2010)

### B. FINDINGS RELATED TO MENTAL IMPAIRMENTS

At step three, the ALJ noted "there was minimal treatment for mental impairments within the record" and Presley "never had a psychiatric hospitalization" and "any treatment she did have was from her primary care physician in the form of medication." [Tr. 17]. The ALJ found that the Presley's medically determinable mental impairment causes no more than mild limitation in any of the functional areas, and therefore is nonsevere pursuant to 20 CFR 404.1520a(d)(1). [Tr. 17]. Presley claims the ALJ erred by failing to include any mental limitations in the residual functional capacity determination. Presley argues this was an error because the ALJ found Presley suffered from a severe impairment (cervical and lumbar degenerative disc disease) [Tr. 16], therefore, the ALJ was statutorily required to consider severe and nonsevere impairments in the disability determination. 20 C.F.R. § 404.1545(a)(2). Presley claims she has more than surpassed the "*de minimis* hurdle for mental severity, but regardless, the failure to weigh Dr. Cooper's opinion and failure to include any mental impairments regardless of severity is certainly not supported by substantial evidence[.]" [DE 19-1 at Page ID# 856].

Presley first mentions, without a clear argument, that the ALJ dismissed the opinion of Dr. Green. [DE 19-1 at Page ID# 855]. The core of Presley's argument on

13

this point is that the ALJ committed reversible error in completely failing to evaluate the opinion of Dr. Cooper as to her mental limitations. As set forth above, Dr. Cooper was a non-examining state agency psychologist who reviewed Presley's medical records in July 2016. Dr. Cooper found Presley suffered from severe anxiety, differing from Dr. Brake's later finding of nonsevere anxiety. [Tr. 656-57 and 475-88]. Dr. Cooper listed moderate limitations in several areas and opined Presley should avoid excessive workloads, quick decision making, rapid changes, and multiple demands. [Tr. 656-57]. Without explanation, these limitations did not appear in the hypotheticals presented to the vocational experts. The Commissioner argues the ALJ's reliance on Dr. Brake's opinion implicitly suggests a rejection of Dr. Cooper's opinion; however, because the ALJ never mentions Dr. Cooper's opinion, the Court cannot make any assumption about whether she rejected it or assigned it weight.

The failure to include any analysis or even mention of Dr. Cooper's opinion was an error. The Commissioner argues the error was harmless because the ALJ found that Presley could perform three representative unskilled jobs, and unskilled work is the least demanding type of work possible, and "[t]herefore, ultimate step five finding was very restrictive and accounted for any work-related mental limitations that were supported by Dr. Cooper's opinion and the record as a whole." [DE 21 at Page ID# 873]. *See* 20 C.F.R. § 404.1568.

"[A]n error is harmless only if remanding the matter to the agency 'would be an idle and useless formality' because 'there is [no] reason to believe that [it] might lead to a different result.'" *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 520, 2011

14

WL 6355168, at *3 (6th Cir. Dec. 19, 2011) (quoting *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004). The Court agrees with the Commissioner that the ALJ assigned a very restrictive RFC and finds that there is no reason to believe remand will lead to a different result under these facts. The regulations explicitly state that the Commissioner will "give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you." C.F.R. § 404.1527. Thus, the ALJ would have been required to give more weight to Dr. Brake's opinion than Dr. Cooper's, as Dr. Cooper did not examine Presley. The Sixth Circuit, in holding that remand was necessary where the ALJ failed to mention an *examining* consultative physician, noted that failure to discuss the weight assigned to an opinion is not necessarily an error at all if the opinion, like here, "was merely cumulative of other evidence in the record." *Id*. at *2. The ALJ noted, for example, that Dr. Green opined Presley "would likely be capable of understanding, remembering, and carrying out simple instructions." [Tr. 20]. However, this opinion rendered verbatiem by Dr. Cooper as well. [Tr. 656-57]. Similarly, both doctors opined Presley would be able to maintain the pace of work, though Dr. Cooper suggested Presley could maintain consistent pace of competitive work, rather than simple and repetitive work that Dr. Green suggested. [Tr. 83 and 471]. Thus, it appears the ALJ likely did the entire record into account, including the nontreating, non-examining opinion of Dr. Cooper, despite not mentioning Dr. Cooper in her decision. The Court finds that this was a harmless error because the opinion of Dr. Cooper was cumulative, and where it was not, it was not supported by the other

15

evidence in the record, and Dr. Cooper was a nontreating, non-examining physician. There is no reason to believe under these facts that remanding would lead to a different result.

Furthermore, if the ALJ determined that examining physician Dr. Brake's opinion was worthy of "great weight" and more consistent with the record overall, then she reasonably found that the record did not support any specific work-related mental limitations, as Dr. Brake concluded in her consultative examination opinion. [Tr. 487 "There are no mental impairments considered singularly or in combination that would prevent the claimant from performing basic work activities."]. Accordingly, the Court rejects Presley's claim that the ALJ's RFC was not supported by substantial evidence because it did not include mental limitations.

## IV.   CONCLUSION

For the reasons stated above, and the Court being sufficiently advised, **IT IS ORDERED** that the Commissioner's motion for summary judgment [DE 21] is **GRANTED** and Presley's competing motion for summary judgment [19] is **DENIED**. A corresponding Judgment will follow.

Entered this 20th day of September, 2023.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY